1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KEVIN CLAIBORNE,

11           Petitioner,               No. CIV S-06-0596 FCD DAD P

12       vs.

13   TOM L. CAREY, Warden, et al.,

14           Respondents.             <u>FINDINGS & RECOMMENDATIONS</u>

15   _____/

16           Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for three years at his initial parole

19   consideration hearing held on April 14, 2004, violated his federal constitutional right to due

20   process.  Upon careful consideration of the record and the applicable law, the undersigned will

21   recommend that petitioner's application for habeas corpus relief be denied.

22                         PROCEDURAL BACKGROUND

23           Petitioner is confined pursuant to a judgment of conviction entered in the Solano

24   County Superior Court in 1995.  (Answer, Ex. 1.)  A jury found petitioner guilty of second

25   degree murder, in violation of California Penal Code § 187, and first degree burglary, in violation

26   /////

                                      1

1 of California Penal Code § 459.  (Id.)  On November 27, 1995, petitioner was sentenced to state

2 prison for a term of fifteen years to life with the possibility of parole.  (Id.)

3          Petitioner's initial parole consideration hearing, which is placed at issue in the

4 instant petition, was held on April 14, 2004.  (Answer, Ex. 2.)  On that date, a panel of the Board

5 of Parole Hearings (hereinafter "Board"), then the Board of Prison Terms, found petitioner not

6 suitable for parole and denied parole for three years.  (Id.)

7          On October 4, 2004, petitioner filed a petition for a writ of habeas corpus in the

8 Solano County Superior Court, claiming that the Board's failure to find him suitable for parole at

9 his initial parole suitability hearing violated his federal constitutional rights to due process and

10 equal protection.  (Answer, Ex. 4.)  The Superior Court rejected petitioner's claims in a reasoned

11 decision on the merits.  (Answer, Ex. 5.)  The court reasoned as follows:

12          Petitioner, Kevin Claiborne applies for a Writ of Habeas Corpus,
           asserting that the Board of Prison Terms ("BPT") wrongfully
13          denied his parole.

14          Petitioner has not made a prima facie case that the BOT wrongfully
           denied him parole.  (People vs. Duvall (1995) 9 Cal.4th 464, 475.)
15          The "some evidence" standard applies to judicial review of the
           BPT's decision to deny parole.  (In re Rosenkrantz (2002) 29
16          Cal.4th 616, 652.)  A reviewing court may not independently
           resolve conflicts in the evidence, determine the wright to be given
17          to the evidence, or decide how the factors relevant to suitability are
           to be considered or balanced.  (In re Scott (2004) 119 Cal.App.4th
18          871, 899.)  "It is irrelevant that a court might determine that
           evidence in the record tending to establish suitability for parole far
19          outweighs evidence demonstrating unsuitability for parole."  (In re
           Rosenkrantz 29 Cal.4th at 677.)

20
           The BPT's decision to deny parole is supported by ample evidence.
21          Petitioner was convicted of second degree murder in which the
           victim was held down and shot in the back of the head and the
22          buttocks while the victim pleaded for his life.  The victim was
           killed in retaliation for having stolen some drugs from the
23          perpetrators.  The record supports the assessment that Petitioner
           was involved in an execution style murder and that the actions
24          display an exceptionally callous disregard for human suffering for
           a relatively trivial motive.  (Cal. Code Regs., tit. 15, §2402(c)(1),
25          subds (B), (D), and (E).)  The parole decision is also supported by
           Petitioner's lengthy, sometimes violent criminal record.
26          Contrary to Petitioner's assertion, a proportionality analysis

pursuant to the matrix provided in Title 15 of the California Code of Regulations, Section 2403(d), is only applicable after a finding of suitability in setting a parole release date.  (Pen Code §3042(a); Cortinas, supra, 120 Cal.App.4th at 1170-1171.)  Petitioner was properly found unsuitable for parole, rendering the proportionality analysis premature at this time.

Accordingly, the Petition for Writ of Habeas Corpus is DENIED.

(Id.)

On February 10, 2005, petitioner filed a habeas petition in the California Court of Appeal for the First Appellate District, in which he raised the same claims that were contained in his habeas petition filed in the Solano County Superior Court.  (Answer, Ex. 6.)  By order dated March 30, 2005, that petition was summarily denied.  (Id. at penultimate page.)

On April 22, 2005, petitioner filed a habeas petition in the California Supreme Court, raising the same claims that were set forth in his petitions for a writ of habeas corpus filed with the Solano County Superior Court and the California Court of Appeal. (Answer, Ex. 7.)  That petition was denied by order filed February 1, 2006, with citations to In re Rosenkrantz, 29 Cal. 4th 616 (2002) and In re Dannenberg, 34 Cal. 4th 1061 (2005).  (Answer, Ex. 8.)

FACTUAL BACKGROUND

The Board described the facts of petitioner's offenses, which have not changed over the years, at the April 14, 2004 parole suitability hearing, as follows:

The information that we have, taken from the Vallejo Police Department report was that the Vallejo Police were dispatched to a residence for a reported shooting incident.  And when they entered the residence, the police discovered the body of the victim lying facedown on the floor.  Paul Cousins, Paul Dwayne Cousins, had been shot in the back of the head and in the buttocks.  Medical personnel arrived and declared the victim dead at the scene.  A witness who lived in the house told police that the victim had entered the house, turned off the lights, closed the door, and appeared visibly nervous.  Suddenly three young males entered the house and immediately tackled the victim and forced him to the floor.  The victim pled with his assailants not to kill him but two shots were fired and the three men fled the scene.  Since this house

3

has been using – was being used as a rock house, a place where people would congregate to base cocaine, there were numerous witnesses to these events.  Initially however, witnesses could not or would not identify the shooters.  As the police investigation ensued in the days and weeks that followed, numerous witnesses would eventually come forward and several of them identified the defendant, Mr. Claiborne, as one of the three men who entered the house to kill the victim.  They described a situation in which the victim had, on a previous occasion, stolen some drugs from various individuals, which had resulted in a vendetta by the three men against the victim.  Several witnesses testified that the defendant was at the scene and one told police that he had held the victim down while a co-responsible shot the victim.  The defendant insisted to police that he did not – that he did drive them to the scene but was in no way connected to the murder.

(Answer, Ex. 2 at 10-11.)  Petitioner conceded at the April 14, 2004, parole suitability hearing that he drove the assailants to the victim's house, thinking that "they were going to beat him up." (Id. at 12.)  Petitioner agreed that the killing was over "a drug deal gone bad or drugs that [the victim] had stolen."  (Id.)  Petitioner knew that one of his companions had a gun.  (Id. at 12-13.) Petitioner admitted that he went into the victim's house, but denied that he held the victim down. (Id. at 13-14.)  He stated that he stood in the kitchen and watched what was going on.  (Id. at 14-15.)  Petitioner did not shoot the victim.  (Id. at 12-16.)  He left the house after the "first gunshot round," ahead of his two companions.  (Id. at 15.)[1]

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

---

[1]  Petitioner has submitted as an exhibit to his pending petition a copy of the decision of the California Court of Appeal affirming his conviction on appeal, which contains additional facts related to his crime of conviction.  (Pet., Ex. D at 2-7.)

1  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

2  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

3  (1972).

4         This action is governed by the Antiterrorism and Effective Death Penalty Act of

5  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

6  1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for

7  granting habeas corpus relief:

8            An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
9            not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
10           claim -

11               (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
12           determined by the Supreme Court of the United States; or

13               (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
14           State court proceeding.

15  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

16  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

17         The court looks to the last reasoned state court decision as the basis for the state

18  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

19  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

20  federal habeas court independently reviews the record to determine whether habeas corpus relief

21  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

22  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

23  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

24  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

25  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

26  1167 (9th Cir. 2002).

1   II.  Petitioner's Claims

2           Petitioner claims that the Board's decision finding him unsuitable for parole

3   violated his right to due process because it "was not supported by any relevant, reliable evidence

4   in the record."  ((Memorandum of Points and Authorities in Support of the Petition (hereinafter

5   Pet.), at 14.)  He also claims that the Board "failed to afford him an individualized consideration

6   of all factors relevant to parole decisions."  (Id.)  Petitioner argues that he did not commit the

7   offense in an "especially heinous, atrocious or cruel manner," because he was not the person who

8   shot the victim and because he was acquitted of an enhancement allegation for personal use of a

9   firearm in the commission of the crime.  (Id. at 22-26.)  He further argues that his prior record is

10  not reliable evidence indicating that he poses a current danger to society, especially considering

11  his exemplary conduct in prison and positive psychological evaluations.  (Id. at 26-31.)  Finally,

12  petitioner argues that the Board failed to consider all relevant factors, such as his institutional

13  behavior and the length of his sentence in relation to other inmates convicted of second degree

14  murder, in reaching its conclusion that petitioner was unsuitable for parole.  (Id. at 32-36.)

15          A.  Due Process in the California Parole Context

16          The Due Process Clause of the Fourteenth Amendment prohibits state action that

17  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

18  due process violation must first demonstrate that he was deprived of a liberty or property interest

19  protected by the Due Process Clause and then show that the procedures attendant upon the

20  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

21  490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

22          A protected liberty interest may arise from either the Due Process Clause of the

23  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

24  expectation or interest created by state laws or policies."  Wilkinson v. Austin  545 U.S. 209, 221

25  (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The

26  United States Constitution does not, of its own force, create a protected liberty interest in a parole

6

date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008).  Accordingly, this court must examine whether the state court's conclusion that California provided the constitutionally required procedural safeguards when it deprived petitioner of a protected liberty interest is contrary to or an unreasonable application of federal law.

Because "parole-related decisions are not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues).  Violation of state mandated procedures will constitute a due process violation only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

In California, the setting of a parole date for a state prisoner is conditioned on a finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The requirements of due process in the parole suitability setting are satisfied "if some evidence supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

445, 456 (1985)).  <u>See also</u> <u>Powell v. Gomez</u>, 33 F.3d 39, 40 (9th Cir. 1994) (citing <u>Perveler v.</u>

<u>Estelle</u>, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, <u>Hill's</u> "some evidence"

standard is "clearly established" federal law.  <u>Sass</u>, 461 F.3d at 1129 (citing <u>Hill</u>, 472 U.S. at

456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

there is any evidence in the record that could support the conclusion reached by the factfinder.

<u>Powell</u>, 33 F.3d at 40 (citing <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987)); <u>Toussaint v.</u>

<u>McCarthy</u>, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

decision must have some indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  <u>See also</u> <u>Perveler</u>,

974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not

require examination of the entire record, independent assessment of the credibility of witnesses,

or the weighing of evidence.  <u>Toussaint</u>, 801 F.2d at 1105.  The question is whether there is any

reliable evidence in the record that could support the conclusion reached.  <u>Id.</u>

When a federal court assesses whether a state parole board's suitability

determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

statutes and regulations governing parole suitability determinations in the relevant state."  <u>Irons</u>

<u>v. Carey</u>, 505 F.3d 846, 851 (9th Cir. 2007)  This court must therefore:

> look to California law to determine the findings that are necessary
> to deem a prisoner unsuitable for parole, and then must review the
> record in order to determine whether the state court decision
> holding that these findings were supported by "some evidence" in
> [petitioner's] case constituted an unreasonable application of the
> "some evidence" principle articulated in <u>Hill</u>.

<u>Id.</u>

The state regulation that governs parole suitability findings for life prisoners states

as follows with regard to the statutory requirement of California Penal Code § 3041(b):

"Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

society if released from prison."  Cal. Code Regs. tit. 15, § 2281(a).  In California, the overriding

concern in determining parole suitability is public safety.  In re Dannenberg, 34 Cal. 4th at 1086.
This "core determination of 'public safety' . . . involves an assessment of an inmates current
dangerousness."  In re Lawrence, 44  Cal. 4th at 1205 (emphasis in original).  Accordingly,

> when a court reviews a decision of the Board or the Governor, the
> relevant inquiry is whether some evidence supports the decision of
> the Board or the Governor that the inmate constitutes a current
> threat to public safety, and not merely whether some evidence
> confirms the existence of certain factual findings.

In re Lawrence, 44  Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re
Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

Under California law, prisoners serving indeterminate prison sentences "may
serve up to life in prison, but [] become eligible for parole consideration after serving minimum
terms of confinement."  In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally sets a parole
release date one year prior to the inmate's minimum eligible parole release date, and does so "in
a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect
to their threat to the public."  In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code §
3041(a).  A release date must be set "unless [the Board] determines that the gravity of the
current convicted offense or offenses, or the timing and gravity of current or past convicted
offense or offenses, is such that consideration of the public safety requires a more lengthy period
of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code §
3041(b).  In determining whether an inmate is suitable for parole, the Board must consider all
relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
> after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
> conditions under which the prisoner may safely be released to the
> community; and any other information which bears on the
> prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b).

1        The regulation identifies circumstances that tend to show suitability or

2   unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

3   prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

4   committing crimes with a potential of personal harm to victims; the prisoner has experienced

5   reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

6   the presence of remorse or has given indications that he understands the nature and magnitude of

7   his offense; the prisoner committed his crime as the result of significant stress in his life; the

8   prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

9   the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

10  probability of recidivism; the prisoner has made realistic plans for release or has developed

11  marketable skills that can be put to use upon release; institutional activities indicate an enhanced

12  ability to function within the law upon release.  Id., § 2281(d).

13       The following circumstances are identified as tending to indicate unsuitability for

14  release: the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

15  the prisoner had a previous record of violence; the prisoner has an unstable social history; the

16  prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

17  problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

18  2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

19  especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or

20  killed in the same or separate incidents; the offense was carried out in a dispassionate and

21  calculated manner, such as an execution-style murder; the victim was abused, defiled or

22  mutilated during or after the offense; the offense was carried out in a manner that demonstrated

23  an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

24  or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

25       In the end, under current state law as recently clarified by the California Supreme

26  Court,

10

the determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. (Dannenberg, supra, 34 Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense.  Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense.  This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

In re Lawrence, 44 Cal. 4th at 1221.

In addition, in recent years the Ninth Circuit Court of Appeals has concluded that, given the liberty interest that California prisoners have in release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole, over time may constitute a violation of due process.  The court has addressed this issue in three significant cases, each of which will be discussed below.

First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor such as the circumstances of the offense could at some point result in a due process violation.[2]  While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three:  (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process.  In this regard, the court observed:

---

[2] That holding has been acknowledged as representing the law of the circuit.  Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.  Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Id. at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these unchanging factors violated due process.  The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Biggs, 334 F.3d at 917 (emphasis added).  Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  Cf. id.  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

Id.

In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass, stating as follows:

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in <u>Sass</u> precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.  <u>Biggs</u>, 334 F.3d at 917.

<u>Irons</u>, 505 F.3d at 853-54.[3]

/////

/////

_____

[3]  The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety.  <u>In re Lawrence</u>, 44 Cal. 4th at 1218-20 & n. 20.  Additionally, a recent panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc.  <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

B. <u>Analysis</u>

In addressing the factors it considered in reaching its 2004 decision that petitioner was unsuitable for parole, the Board in this case stated as follows:

> PRESIDING COMMISSIONER FISHER: Okay, thank you. Mr. Claiborne, the Panel reviewed all the information received from the public and relied on the following circumstances in concluding that you are not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to the public safety if released from prison. And we looked at – we looked first at your commitment offense. And the commitment offense was carried out in an especially cruel and callous manner. It was carried out execution style. The victim was shot in the back of the head and it was clearly carried out in a manner that demonstrates exceptionally callous disregard for human suffering. He was – he was begging for his life, being held down on the floor, and was shot in the back of the head and the buttocks. He was clearly afraid, in that he had come into the house and turned out the lights. And once again, was asking for his life and that was ignored. The prisoner has, on previous occasion, inflicted or attempted to inflict injury on a victim. The inmate had two assault with a deadly – or one assault with a deadly weapon as a juvenile and one assault as an adult, certainly an escalating pattern of criminal conduct. You have a pretty healthy list of prior charges here, including burglary, vandalism, assault with a deadly weapon, possession of a controlled substance for sale, as – just as a juvenile. And false ID to a police officer, several driving with an invalid license, and you know, you didn't stop after the first time, just kept going. Possession of a firearm, DUIs, all of those leading up to the commitment offense and have – had clearly failed to profit from society's previous attempts to correct your criminality. You did juvenile probation. You did juvenile camp. You did county jail. And at any of those times, you could have made a decision to change the course that you were on and didn't. Your psychiatric report, dated 9/23/03 that was authored by Dr. Rouse was not totally supportive, in that it was inconclusive. In that it compares the inmate's risk of violence to the average California state prison inmate. And we would like to request an addendum to that report because we want to see a comparison of risk of violence to the average citizen. It also, in that report, said that the inmate has gained some insight into how his lifestyle contributed to the commitment offense. In response to 3042 notices, the District Attorney of Solano County has sent a representative today to oppose the Board finding Mr. Claiborne suitable for parole. The Panel would like to commend the prisoner for getting his GED while he's been here, for getting two vocations. He's completed Computer Refurbishing. He's completed vocational Painting. He's been involved in vocational Electronics, Emergency Management Institute programs. The self-help programs that he

14

has been involved in include Set Free Prison Ministries, Plato Self Instructor – Self-Instructing Computer Literacy, and Parenting classes. He's worked as a Graphic Arts clerk and also on the Yard Crew. In a separate decision, the Panel finds that it's not reasonable to expect that parole would be granted at a hearing during the following three years. Once again, the commitment offense was committed in an especially cruel manner and it was carried out in a very dispassionate way, with a disregard for the victim and his suffering. In that, once again, the victim was held down on the ground by several male adults who rendered him helpless while he was being shot in the back of the head and in the buttocks. And the motive for the crime was very trivial, in relation to someone losing their life. The prisoner has a prior record of violent behavior, in that he had an assault with a deadly weapon in 1987 as a juvenile and another assault in 1991 as an adult. He has an extensive history of criminality and in fact, it includes a possession of a firearm in 1993. A recent psychiatric report, dated September 29, '03, authored by Dr. Rouse, indicates that – only that he has gained some insight into how his lifestyle has impacted decisions leading up to this commitment offense. The Panel recommends that the prisoner remain disciplinary free and whenever available, continue to participate in any self-help programs that you have available here. Do you have any questions or comments?

COMMISSIONER LAWIN: Yes, both actually. I'll add to the decision that the Panel found, Mr. Claiborne, that you need additional time to not only further delve into the causative factors for your participation in your life crime (sic), why you would get involved in this. But the psychiatrist said you have some insight. It sounds – our reading of that is that you don't have a sufficient level of insight into why you got involved. And if you don't know why you got involved, what led you to get involved, we're not convinced that you won't get involved in a similar lifestyle again. So that's something that is of concern to us. I hope that you can find some self-help programs that will help you in that regard.

(Answer, Ex. B at 68-72.)

After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and Irons, and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his due process challenge to the Board's April 14, 2004, decision denying him parole.

First, and perhaps most importantly, at the time of the challenged parole suitability hearing, petitioner had not yet served the minimum number of years required by his

sentence.  Pursuant to the holding in <u>Irons</u>, petitioner's right to due process was not violated

when he was deemed unsuitable for parole prior to the expiration of his minimum term.  <u>Irons</u>,

505 F.3d at 665.  Further, the Board's decision that petitioner was unsuitable for parole and that

his release would unreasonably endanger public safety was supported by "some evidence" that

bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  The Board relied in large part on the

circumstances of petitioner's offense of conviction, his prior criminal history, and the need for

him to come to terms with the motivation for his crime, in denying him a parole date.  According

to the cases cited above, these factors constitutes "some evidence" supporting the Board's

decision where petitioner has not served the minimum term required by his sentence.  <u>Sass</u>, 469

F.3d at 1129; <u>Irons</u>, 505 F.3d at 665.

        The Board's 2004 decision that petitioner was unsuitable for parole and would

pose a danger to society if released meets the minimally stringent test set forth in <u>Biggs</u>, <u>Sass</u>,

and <u>Irons</u>.  This is true even though petitioner was not the person who shot the victim.  This case

has not yet reached the point where a continued reliance on an unchanging factor, such as the

circumstances of the offense, in denying parole has resulted in a due process violation.

Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to find him

suitable for parole at the April 14, 2004 parole suitability hearing violated his right to due

process.  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 664-65.

CONCLUSION

        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

a writ of habeas corpus be denied.

        These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16

1  shall be served and filed within ten days after service of the objections.  The parties are advised

2  that failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: September 30, 2009.

5

6  _____

7  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

8  DAD:8:
   claiborne596.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26